Appellant. Mr. Smith for the Appellant, Mr. Strand for the Appellee. May it please the Court, my name is Greg Smith and I'm the appointed counsel representing Robert Miller in this case. I have 10 minutes and I want to touch on Issues 1, 2, and 4, Suppression, Speedy Trial, and Sentencing, so I'll try to be quick. For all three of  them, the defendant's conviction and sentence should be vacated and remanded. On Issue 1, Suppression, 22 boxes of evidence were seized without a warrant and used against the defendant at trial. The district court's only stated basis for denying suppression was that Robert Miller lacked standing in the vehicle where it was seized, but he had separate standing in the boxes themselves, and the district court wrongly ignored that issue, never decided it, even though it was raised below. Now the government says, even if the district court was wrong about that, we can affirm on alternative grounds, which is that there was probable cause to search the car. And here, there was an arrest warrant where they conceitedly had probable cause to arrest Mr. Miller, and they learned upon executing that there was probable cause to search the car and, in effect, seize those boxes. Because there was no testimony taken below, and because the court reserved the issue of Mr. Miller anything beyond standing to be addressed at a later time. The government never put on any witness. It said it had a witness that it would put on on that issue where cross-examination would have been available. And the defendant could have put on evidence too, but the court deferred that issue. Now, Judge Wilkins, I'm not saying there may not be some challenges below on that issue, but that is what the court ought to do. It ought to send it back for a hearing on the probable cause issue, because there was no hearing on the probable cause issue. The court made it very clear it was only going to address standing, and then it addressed standing in isolation. And it is wrong for the government to do what it did here, which was to advise the court, please defer that issue, and then for it now to stand up on appeal and say this incomplete issue that was never fully vetted below conclusively proves that probable cause existed. There was no cross-examination, and there was no ability to present the issue for the defense below. Aren't you, isn't your, your only argument is ineffective assistance of counsel, isn't it? I'm sorry. Isn't your argument ineffective, aren't you arguing ineffective assistance of counsel on this issue? That is not my only issue on number one, Your Honor, no, Judge Tatel. We are arguing that the court erred in refusing to address the standing issue on the boxes. So can I ask you about that? If you're raising the straight-up allegation against the search, not just ineffective assistance of counsel, but it sounds like what you're saying is you're not challenging the authority to search the car. What you're challenging is something with respect to the boxes. And what you're challenging has to be either a search of the boxes or the seizure of the boxes. With respect to the search, there was a warrant, so you're not challenging the search of the boxes. All you're challenging is the seizure of the boxes. That's correct, Your Honor. We're challenging the seizure of the boxes from the car. So if that's the way the argument goes, then there seems to be a mismatch because all the briefing is about whether there's a right to privacy, which goes to search. A seizure argument is about divestiture of a possessory interest. So it's, in other words, if you've already said that the search is okay, searches are bound up in privacy, so all the cats and all those cases are about searches. They're not about seizures. Seizure is something else, which is that I wasn't allowed to possess this thing that I possess. It's my object. The government wrongfully divested me of the ability to possess that object. I'm not talking about privacy because that has to do with a search. This has to do with a seizure, and it seems kind of strange because all the briefing is about cats, reasonable expectation of privacy, but I don't think anyone will find a case where it goes to the validity of the search. Well, I do think there was a deprivation of his possessory interest here, but I think that is grounded as all Fourth Amendment interests are grounded in privacy interests, and therefore we talked about the reasonable expectation of privacy. See, I don't think all Fourth Amendment interests are grounded in privacy because I think the Supreme Court has cases that say that there's two different sets of interests that are going on here. There's a possessive interest, which goes to seizure. There's a about privacy in searches. Once you give up on the search of the box, all you're talking about is the fact that somebody besides you, your client, had dominion and control over the box, not because of the concern about privacy about what's inside the boxes, but just that I was divested of the ability to use that box for a period of time, but none of the arguments in the briefing deal with possessory interests at all. They're all about privacy interests, so it seems like there's just a complete disconnect. Well, we raised it, the government responded, and I think all of us considered that the privacy was a part and parcel of the ability to challenge a seizure as well as a search. Seizure. If the court wants supplemental briefing on that, I suppose we could consider doing that. Well, do you know of cases where a seizure, just a seizure, not a search, but a seizure, the validity of a seizure is predicated on the existence or nonexistence of a right of pass? Are there cases that analyze a seizure that way? Your Honor, it's asking something that neither side has really addressed, and so I'm not prepared to do that, but if the court wants supplemental briefing, both sides, I'm sure, could provide that. Let me move on to issue two, the speedy trial. An egregious speedy trial is evident here, admitted. They didn't just miss by a few days. The government's own estimate is 171 days, two and a half times the maximum. Our estimate is more than five times the maximum. The speedy trial rights were expressly invoked and almost 900 days passed until the trial, yet the defendant's trial counsel seemingly was wholly unaware that a speedy trial violation had existed. The government's claims that this was done for strategic reasons is pure speculation, and its claims that any dismissal surely would have been with prejudice or without Can both of those things be sent back to the district court if we agree that there was a speedy trial violation? I think that would Potentially, shouldn't the district court determine whether it was strategic or not and determine in the first instance what the defendant agreed? I believe that would be an appropriate disposition, Your Honor, yes. I think you could remand on the issue of speedy trial, and I think we've asked that that be done. We think that's appropriate. The court doesn't want to, I mean, I think it could be clear enough to where the court could rule that a violation exists as it did in Marshall, but if the court wishes to remand, that's a possibility as well. Finally, just because I want to reserve some time, on Issue 4, a remand for resentencing is absolutely needed. This district court applied a repealed version of 5G 1.3 at defendant sentencing, or the equivalent of it, and imposed a presumption of consecutive time on the defendant. Is it important on him to disprove that the time should be ordered consecutive to his state sentence? To be fair to the district court, the district court acknowledged what the guideline actually said and acknowledged that he had discretion to make it either consecutive or concurrent. He just announced that his preference is separate crime, separate time, and to make it consecutive, right? I think it was more than a preference, Your Honor. He imposed a presumption, which placed a burden on the defendant that is placed on no other defendant around this country that is exclusive to his courtroom that he applies generally in this courtroom. And the court should tell him, tell the judge, that that is not an appropriate presumption to apply as a general rule, which is what he indicated he does in his own courtroom. So in a crack cocaine case, if a judge says, look, I've written about this quite a bit, and I believe it should be a one-to-one, and I know that that's not what the Sentencing Commission has said or Congress has said, but I think it should be one-to-one, and, you know, government, unless you convince me otherwise, that's kind of the way I'm inclined to sentence in these crack cocaine cases. That would be presumptively an abuse of discretion. I think that particularly in a situation like this where there's a presumption the other way, if relevant conduct applies, that to shift the presumption alternatively would not be appropriate. That is a separate issue, though, regarding variances, and the court would have to justify any variance that it imposes individually in each case. I do think it would be inappropriate, Your Honor. I do, for the court to apply a generalized presumption only in his or her courtroom that applies to no one else around the country. If the court has made a determined decision that it has to be done along those lines, it has to be done by means of a variance that is then appealable. It's not done in the context of shifting the presumption and, more importantly, applying a repealed version of the sentencing guidelines. The court, at a minimum, should remand so that the court is applying the proper standards. This was procedurally and substantively unreasonable. Just to close out, in this single defendant, not particularly sophisticated white-collar case, where there was no violence, drugs, guns, gangs, et cetera, and involving less than a million dollars in total loss, this defendant who had never before faced a serious amount of jail time got 204 months on this relatively mid-range white-collar offense. That's an enormous amount of time, and for that to be imposed consecutive to his state time is substantively unreasonable, and particularly when it was imposed in a procedurally unreasonable way, the court needs to remand. Okay. Thanks. We'll hear from the government. Good morning, Your Honors. This is Stratton Strand on behalf of the United States. As to the suppression issue, here, of course, counsel has not, in fact, challenged, asserted that there was any legitimate expectation of privacy in the car itself, and for that reason alone, there cannot have been a legitimate expectation of privacy in the boxes placed in that car. Further, as to Judge Wilkinson's suggestion that PC was established, in any event, there is quite sufficient evidence on the record for this court to rule on that affirmative alternative ground. We know that the Secret Service had been investigating as of March 15th of 2004, had spoken to investors, former employees, knew about what was going on down in Georgia with the Foxworthy situation, and then knew from an investor with whom Saylor had been in touch already, the Queen Anne investor, Debnam, that that very day, August 8th, April 8th, Mr. Miller had told all his employees not to come to work the next day and had packed up all his boxes and put them in his girlfriend's mother's car. But most of that was not stipulated to you, and doesn't the defendant have a right to challenge that? Actually, that came in in Saylor's affidavit, and the defendant accepted, for purposes of the suppression hearing, the truth of Saylor's affidavit. But his affidavit didn't specify when he learned most of that information. The affidavit specifies all of the information. It specifies that he already knew about the Maryland fraud charges and the Maryland fugitive warrant, as Your Honor pointed out. It specifies everything that he learned on April 8th. And then, of course, we have in the trial record additional information as to what he knew when he testified at trial, and that trial evidence can be considered in upholding a suppression ruling. So we do know that he began his investigation March 15th. We do know that he'd already been talking to investors. We know that he, on March 26th, had been to the offices themselves and talked to the landlord about Mr. Miller and their experience with him. And particularly given the facts of the day itself, a fair probability that the boxes will contain evidence of a crime is a pretty low standard, given the obvious attempt at it was very clear that the officers had probable cause for a seizure. You started out by saying that he doesn't contest, he doesn't assert a privacy interest in the car. Correct. And therefore, he can't assert a privacy interest in the box. Why does the second follow from the first? Because there's lots of cases where even if you don't have a privacy interest in the vehicle, if it's a vehicle with which you have some association. So you can't object to a search of the vehicle, simpliciter, but if it's a vehicle with which you have some association, and then you've put in a compartment that has all kinds of markings on it that say, this is mine, this is my private property, I'm putting a lock on it, then it seems like that's relevant. The cases don't just say, well, you can't object to a search of the car, and therefore you can't object to a search of your own item within the car. Okay. Your point is well taken, Your Honor. This takes us into the Mitchell context, which is the case that we rely on primarily. There, the court found both that the defendant did not have a legitimate expectation of privacy in the vehicle. It wasn't his vehicle. He was merely a passenger. Of course, Mr. Miller was not even a passenger. He was not even present in the car. It was his girlfriend's mother's car, just as in the Mitchell case. And then Mitchell went on to analyze, did Mr. Zollicoffer take any reasonable precautions to maintain the privacy of the drugs that he had placed in that car? Right. So there's a secondary inquiry about it. You're absolutely right, and I apologize for skipping over that. Here, there was no evidence, and of course it was the defendant's burden to establish that his own rights were violated. There was no evidence put in the record as to any normal precautions to safeguard the privacy of these devices. So then this brings me to the question that I asked of the other side, which is, that assumes that the relevant question is whether there's a privacy interest in the container. And that's what they've argued in this appeal. That's what both sides are joining issue on, is whether there's a privacy interest in the container. But there's no objection to the search of the container. There's only an objection to the seizure of the container. Right. And seizure doesn't – that's not a privacy argument. That's a possession argument. Well, privacy is relevant to the seizure question. If you take your briefcase and you place it out on the street, because you have exposed it to the public, even though you own it, you no longer can challenge the seizure of the briefcase. So privacy is, in fact – remains a relevant consideration. A property interest is one factor, but it's not the deciding factor. But even in the briefcase scenario, it's not that you've exposed it to the public. It's that you've put it someplace where you don't have any expectation that you will be able to maintain custody and control over it. I mean, the lesson of most, you know, our case, is that you can give a bag to a grocery store clerk, but we focused on the fact that there was an expectation that that clerk would take care of the bag and not let just anybody walk away with it and therefore they're standing to object to a search of the bag, right? Right, but my – I completely agree, Your Honor. My point was the ownership itself does not give you – does not give you standing. In the context where you – it's your briefcase. You put it outside. It remains your briefcase. If the police come along and pick it up, you don't have challenge – you don't have standing to challenge their seizure of the briefcase. So I'm just saying that privacy is a relevant consideration. Property interest is also a relevant consideration. Here, of course, Appellant never showed that these were his boxes, and we specifically argued that they were not his boxes. They were – the record shows that they were the company's boxes. And he's the CEO of the company. The company is an incorporated company. He's the CEO and managing director. There's no evidence that he's the sole shareholder. And Mancusi v. DeForte, the Supreme Court case involving the union official, specifically said that Mancusi would have no standing to challenge the seizure of the records from his office because they were the union's records, not his records. The only basis that he had to challenge the seizure of those records was if he had a privacy interest in the office. So here's another way to think about it. I see what you're saying. So if you're complaining about a seizure, I think what you're complaining about is you don't have possession of the item. You're not complaining about the fact that I've lost privacy in the item. That's when somebody's looked inside it and figured out what's in it. Now, I take your point that if it's not your item in the first place, then you can't complain about a lack of possessory interest over it because it wasn't yours to possess to begin with. But it seems like another way to deal with the case is to say that, if you're not even complaining about a lack of a possessory interest, then you can't complain about the seizure because that's not a seizure argument. That's a privacy argument. It's a search argument. Exactly. And they have not complained about that. Of a dispossession. Right. Okay. Correct. If I can move on to the ineffective assistance claim as to the speedy trial. Now, here we don't have to speculate as to defense counsel, able defense counsel's reasons for not pursuing a speedy trial act violation because appellant has utterly failed to show a reasonable probability of a different outcome in the case. Had defense counsel moved for a speedy trial dismissal, all of the statutory factors that govern whether to dismiss with or without prejudice would have counseled in favor of a dismissal without prejudice. Well, if there had been a dismissal without prejudice, we wouldn't be here, right? And he would be able to relitigate the suppression issue, right? Not necessarily. It's likely that the suppression ruling would be law of the case because it's still the same prosecution. And if there had been a dismissal without prejudice, that would not have been a final judgment. Appellant would not have had a right to appeal that dismissal without prejudice. Is that right? Law of the case where there's a new indictment is law of the case? There is case law out there that with a new indictment, the initial suppression ruling is still law of the case. Did you cite that in your brief? No. My supervisor made me think of that idea after I put it in the brief. Excellent. It's a nice response. You always wonder about that. It's nice to have a lawyer actually tell us why. I'm trying to think. Was that throwing your supervisor over the bus? I think it's your supervisor who didn't look at a draft of the brief. That was a different supervisor. In any event, appellant would not have had the right to appeal a dismissal without prejudice. What would have happened is, because it wouldn't have been a final judgment, final judgment in a criminal case is conviction and sentence. So if the district court had granted a dismissal without prejudice, then the government would have re-indicted. The case would have gone through. There obviously would have been a conviction again. At that point, then the defendant could have challenged a dismissal without prejudice. But the ultimate result in the case would have been... One of the things that the defendant complained about leading up to the trial was that he didn't think that they were ready. They needed more time. Government objected to that. Said, no, we want to move forward. This has dragged on long enough. A dismissal without prejudice would have given them more time. Time always helps. It can't hurt. The Russian case that we cited specifically rejected the notion that it can't hurt. It isn't sufficient grounds to find deficiency on the part of defense counsel. Defense counsel, as Judge Tatel indicated in Richardson, defense counsel could have legitimate reasons for not wasting time on litigating a dismissal motion, which they know is just going to put them back in the same position they were in before. When they have limited resources and there are limited benefits to it, they also risk, for instance, hacking off the trial judge who has been very accommodating in giving them all these continuances. There are a number of reasons that they could have legitimately decided not to pursue that strategy. You're not suggesting that the judge would take offense to a motion? I'm suggesting that defense counsel reasonably could have said to themselves, the upside here is not great. We'll end up with a new indictment. We will have wasted time litigating a motion that puts us right back in the same position we are in now. It's not going to get us anywhere. This judge has been very accommodating on all of our requests for continuances. How is he going to take it if now we turn around and try to switch up on him? I'm not saying that he would take it that way, but you can see defense counsel having that thought process. But that all goes to the deficiency prong, and what we're focusing on is the prejudice prong, which is it's their burden to show a reasonable probability that the outcome of the prosecution would have been different, and they simply haven't shown, they cannot show that, given that all factors would have counseled for a dismissal without prejudice. There would have been a re-indictment. The same evidence would have been put on, and the result would have been the same given the overwhelming evidence. Why do we assume that there would have been a re-indictment? Sometimes cases aren't re-indicted. Why do we assume that all the same evidence would have come in? This is a very important prosecution, Your Honor. This was 27 victims, and the defendant was facing a 130-year statutory maximum. This is a very important case. The government absolutely would have re-indicted. It obviously had the evidence to re-indict. And the suppression, if there had been another suppression, even if there had been another suppression hearing, the evidence that they claimed they would have put on would not have affected the outcome of the standing ruling, and there still was probable cause for the seizure, so none of that evidence would have been suppressed. And then the same evidence would have been put on at trial, and I think as we demonstrated in our brief, that evidence was absolutely overwhelming. So they cannot show a reasonable probability of a different outcome had Able Defense Counsel moved to dismiss them to be trial grounds. If I could quickly, I know my time is probably out already. It's your way over. Go ahead. On the sentencing, if I could. Two sentences. Go ahead. The record shows, as Judge Wilkins's question suggested, that the trial judge It's Judge Wilkins. Sorry, Your Honor. Judge Wilkins suggested, shows that the trial judge stated a general proposition but also specifically recognized that his discretion to sentence either consecutively or concurrently and went through the specific factors that the comment to 5G 1.3 says should be considered, his age, the length of time of the other sentence, how much is left to be served, and all of the 35-53 factors in deciding, look, this is a guy who has for 30 years and over the course of 17 convictions made a life's work out of defrauding people, and the sentence that I need to impose here needs to be one that's going to protect society from him and make sure that he never, ever gets the chance to defraud people again. Okay, great. Thank you. Thank you, Your Honors. Let's see. Mr. Smith, I think you were out of town, but the government went considerably over, so you can take three minutes if you'd like it. Thank you very much, Judge Tegel. Let me address first the claim that my client claimed no interest in the car itself. That is just not so. In the ineffective assistance claim, for example, specifically, we talk about the fact that the defendant claimed he had keys to the car in his pocket. The government has still not answered, even now, did he have the keys to that car in his pocket? We don't know. The defendant's counsel never followed up until after the hearing closed, which was ineffective. That's a key point in terms of standing. If he had the keys in his pocket, that's a huge point in favor of standing, and particularly for them to say that there would have been no prejudice if he'd had a chance to get back on another case. He could have gotten that fact resolved in his favor, and that would have made a difference. Second, the government talked about the Mitchell case and said that in that case it's a passenger coming into the car, and he was found to not have standing. The passenger was Zelikoffer. Zelikoffer, there was no evidence that he had brought anything into the car. Here, our client undeniably directed boxes to be put in the car. Totally different. In Zelikoffer, the guy denied that the drugs were his. How is he going to have standing in something he swears under oath he denied? My client never denied the boxes were his. He consistently said they were his. They claimed that these were not his boxes, but the girlfriend told the agents that the defendant himself had said he didn't want seizure of, quote, his files. In there, there was also undeniably his own personal records. He had standing in his personal records. The court never found, as it should have, never addressed the issue of whether he had standing in the boxes, and this court should not be making that determination in the first instance. On speedy trial, the law of the case issue is wrong. First of all, it would be a separate indictment. It's not clear it would apply, but even if it could, even if it could, there was a speedy trial violation before the suppression hearing, before the suppression decision was reached. He could have moved for a dismissal on speedy trial grounds and won before there was any suppression ruling. Because of that, this notion that a suppression ruling undeniably would have applied to the next case if he'd gotten a reindictment, of course, assuming he could. They're assuming they would have gotten a reindictment. We don't know that, but even assuming they could, there's no reason to believe that a suppression ruling even would have been made if it had been raised at an appropriate time by competent counsel. The government also asks on the prejudice prompt for this court to be the one in the first instance making prejudice determinations on speedy trial. Those determinations were never made below. This court isn't reviewing a prejudice determination. He's asking you to make that call in the first instance. Will you correct me if this isn't an accurate description in your brief, but on the question of a dismissal with prejudice, you certainly do say that was a possibility, but you never in your brief that I saw engage the 3162A2 factors and argue that a dismissal with prejudice would have been appropriate. We do say that in our briefs, Your Honor. We go through it in great detail. Once the government says that it wouldn't have happened, we go through it in great detail. The reply brief goes through each of the factors in specificity and explains why that's a totally reasonable conclusion. It's a white-collar case. The delay is two and a half minimum to five times the norm, and this court absolutely should not find that it is an abuse of discretion for what would have been an abuse of discretion in a white-collar case when there's a three to five times violation to say that it should be dismissed with prejudice. It certainly wouldn't rise to that level, and if you were to rule that, it's the end of the Speedy Trial Act. Finally, in terms of the discretionary call on the sentencing, they said it was within the court said it had discretion to rule otherwise, but the discretion had an overlay. The court was applying a presumption that it should not have applied. Getting back to your point, Judge Wilkins, if the court was to do it, say, in a crack situation, it would have been by means of a departure or a variance where we could have appealed that and had its reasonableness evaluated on appeal. It would have been an outside-the-guideline sentence. That's what this was. The guideline said it didn't have to have a presumption that it was consecutive, and the court imposed that presumption wrongly. It was greater than necessary. A 200-plus-month sentence consecutive on a guy who is going to be 75 when he gets out is more than was necessary on this case in a white-collar case. Thank you very much. Thank you. Mr. Smith, you were appointed by the court to represent Mr. Miller, and we're grateful to you for your excellent assistance. Thank you. Thank you. We'll call the next case, please.
judges: Tatel, Srinivasan, Wilkins